**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FRANK DIPPOLITO, | : |
| Plaintiff, | : Civ. No. 13-0175 (RBK) (JS) |
| v. | : |
| | : **OPINION** |
| UNITED STATES OF AMERICA, et al., | : |
| Defendants. | : |

**ROBERT B. KUGLER, U.S.D.J.**

## I. INTRODUCTION

Frank Dippolito ("Plaintiff") is a former federal prisoner who was previously incarcerated at the Federal Correctional Institution ("F.C.I.") Fort Dix, in Fort Dix, New Jersey, at the time he filed this action. In January, 2013, Plaintiff submitted his *pro se* civil rights complaint pursuant to *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971). On July 15, 2013, Plaintiff's application to proceed *in forma pauperis* was granted. (ECF No. 4.)

The Defendants have moved to dismiss the Second Amended Complaint under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted in two separate motions. For the reasons set forth below, Defendants' the American Correctional Association ("ACA") and James A. Gondles, Jr. motion to dismiss will be granted. The remaining Defendants motion to dismiss will be granted in part and denied in part.

## II. FACTUAL BACKGROUND

Plaintiff brings *Bivens* claims under the Eighth Amendment and First Amendment to the United States Constitution. Under the Eighth Amendment, Plaintiff alleges that the conditions

present at F.C.I. Fort Dix, taken together, amount to unconstitutional cruel and unusual punishment. Under the First Amendment, Plaintiff alleges that a number of Defendants engaged in retaliatory conduct after Plaintiff exercised his right to file grievances with the prison administration. Plaintiff also advances claims under the Federal Tort Claims Act ("FTCA") and the Racketeer Influenced Corrupt Organizations Act ("RICO") stemming from the same conduct, as well as allegedly collecting illegal profits by detaining inmates without cause.

## A. Eighth Amendment Claims

Plaintiff alleges a number of circumstances that, he argues, amount to "cruel and unusual punishment" under a conditions of confinement theory of liability under the Eighth Amendment. First, Plaintiff alleges that F.C.I. Fort Dix has a "serious asbestos problem and lead paint issues." (ECF No. 42 ¶ 44.) He then claims that the wardens had knowledge of this problem and directed Defendants Carroll, Robinson, and Bullock to fix it, but they did nothing. (*Id.*) Plaintiff also alleges that the water the inmates are made to drink is dangerously polluted. (*Id.* ¶ 47.) Plaintiff next claims that the personal address ("PA") system at F.C.I. Fort Dix is perilously loud. (*Id.* ¶¶ 47-48.) The "test results" Plaintiff assumed would confirm his suspicions of the PA system came back negative, however, and Plaintiff now argues those results were "falsified by Defendant Holdren, with the knowledge of Defendants Hutches and Nichols." (*Id.* ¶ 49.) He also charges that the conditions in the "5800 block … dining hall" during the government sequester amounted to unconstitutional overcrowding because one of the two dining halls had to close, effectively doubling the population of the lone dining hall. (*Id.* ¶ 52.) In addition to the dining hall, Plaintiff complains that cells are routinely double-bunked and only have two windows and one ceiling fan. This, combined with F.C.I. Fort Dix's policy against personal fans and the "jet exhaust fumes" from nearby McGuire Air Force Base, allegedly makes for poor ventilation and

unsanitary conditions, especially in warmer months. (*Id*. ¶¶ 56-60.) Plaintiff also complains that F.C.I. Fort Dix fails to outfit inmates with seasonally appropriate dress, *i.e.*, "rain gear, winter coat, etc." (*Id*. ¶ 62.) In terms of medical care, Plaintiff claims that he requested a cancer screening for his lungs but never received one. (*See* ECF No. 13-1, Ex. VV.) Plaintiff asserts that all of these, taken together, amount to conditions of confinement that fun afoul of the Eighth Amendment's prohibition on cruel and unusual punishment.

**B. First Amendment Claims**

Plaintiff also makes a number of allegations under a First Amendment retaliation theory. Plaintiff argues that, in retaliation for (1) filing grievances concerning the administration at F.C.I. Fort Dix, and (2) helping other inmates with their own legal papers, Defendants Bullock, Carroll, Alexander, Anderson, Harwick and Daniels stripped Plaintiff of his prison job assignment, filed bogus incident reports against him eventually leading to a hearing before a "kangaroo court" and a ninety-day loss of phone, e-mail and visitation privileges, improperly denied his requests for a bottom bunk, intimated in front of other inmates that Plaintiff was a "rat," and improperly denied requests to be transferred to a halfway-house under the Second Chance Act. (*Id*. ¶¶ 83-125.)

**C. FTCA and RICO Claims**

Plaintiff also restates his prior Eighth Amendment allegations as actionable under the FTCA and brings them against all thirty-one individual Defendants, the BOP, and the United States. (*See* ECF No. 42 ¶¶ 78-81.)

Plaintiff also alleges that all thirty-one individual Defendants, plus Defendants American Correctional Association ("ACA") and James A. Gondles, Jr., ("Gondles") are liable under RICO for "trad[ing] in a commodity [they] identify as inmates, and use[] that commodity to reap profits and rewards." (ECF No. 42 ¶ 127.)

### III. PROCEDURAL BACKGROUND

On January 8, 2013, Plaintiff filed a Complaint with the Court in which he alleged that the Bureau of Prisons ("BOP"), the United States, and thirty-one named individuals violated rights afforded to Plaintiff by the First and Eighth Amendments to the United States Constitution under *Bivens*, as well as the FTCA and RICO. (*See* ECF No. 1.) On or about April 9, 2014, Plaintiff filed an Amended Complaint with the Court in which he added more detail to his original allegations. (*See* ECF No. 13.) On October 21, 2014, Defendants United States, Bureau of Prisons ("BOP"), Lappin, Dodril, Conley, Zickefoose, Hollingsworth, Fitzgerald, Hudgins, Holdren, Lawhorn, Dynan, Nichols, Hazelwood, Sutherland, McLaughlin, Carroll, Robinson, Bullock, Alexander, Hardwick, Yeoman, Daniels, Lemyre, Donohue, Kenney, Watts, and Holder ("Defendants") filed an Answer with the Court. (*See* ECF No. 23.) Subsequently, on December 31, 2014, Defendants filed a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). (*See* ECF No. 29.) On April 17, 2015, the Court granted Plaintiff leave to file a second Amended Complaint, which he did. (*See* ECF Nos. 42, 48.) On May 14, 2015, the above listed Defendants filed a motion to dismiss Plaintiff's second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (*See* ECF No. 52.) In their motion to dismiss, Defendants argue that a number of named Defendants must be dismissed from Plaintiff's First and Eighth Amendment claims due to lack of personal involvement; that a number of Plaintiff's First Amendment claims are untimely; that all claims arising under the FTCA must be dismissed because only the United States can be a proper defendant under the FTCA and the FTCA does not allow suits for constitutional torts; and that all claims arising under the RICO Act must be dismissed for lack of standing. (ECF No. 52-1.)

The ACA and Gondles are also included as Defendants solely on Plaintiff's RICO Act claim. (ECF No. 42 at 46.) Defendants ACA and Gondles have filed a separate motion to dismiss under 12(b)(6) that will also be analyzed as part of this Opinion, part IV.D, *infra*. (*See* ECF No. 50.) Defendants ACA and Gondles argue, similarly to the above mentioned Defendants, that Plaintiff does not have standing to bring a RICO claim and thus the claim against them must be dismissed with prejudice. (*Id*. at 5-6.)

On June 15, 2015, Plaintiff filed a response in opposition to Defendants' motions to dismiss. (*See* ECF No. 53.) For the following reasons, Defendants the United States, BOP, and thirty-one individual defendants' motion will be granted in part and denied in part and Defendants ACA and Gondles' motion will be granted.

### III. STANDARD OF REVIEW

**A. 12(b)(6) Motion to Dismiss**

In considering a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must " accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal quotations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id*. at 679.

**B. *Bivens* Actions**

*Bivens* is the federal counterpart to 42 U.S.C. § 1983. *See Walker v. Zenk*, 323 F. App'x. 144, 145 n.1 (3d Cir. 2009) (per curiam) (citing *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)). In order to state a claim under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation of the right was caused by a person acting under color of federal law. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006) (stating that under Section 1983 "an individual may bring suit for damages against any person who, acting under color of state law, deprives another individual of any rights, privileges, or immunities secured by the United States Constitution or federal law," and that Bivens held that a parallel right exists against federal officials); *see also Collins v. F.B.I.*, No. 10–3470, 2011 WL 1627025, at *6 (D.N.J. Apr. 28, 2011) ("The Third Circuit has recognized that *Bivens* actions are simply the federal counterpart to § 1983 claims brought against state officials' and thus the analysis established under one type of claim is applicable under the other.") (internal quotation marks and citations omitted).

### IV. DISCUSSION

**A. Defendants are not "persons" under *Bivens* and thus are not amenable to suit in their official capacities.**

Plaintiff asserts all claims against the United States, the BOP, and all individual Defendants both in their official and individual capacities. Defendants first argue that they are not amenable to suit in their official capacities under *Bivens* because, as either federal agencies themselves or employees of either the BOP, F.C.I. Fort Dix, or the Department of Justice, they are not "persons" under the law. The Court agrees.

To be liable under *Bivens*, a defendant must be a "person." The Third Circuit held in *Jaffee v. United States*, 592 F.2d 712, 717 (3d Cir. 1979), that *Bivens* claims against the United

States and its agents are barred by sovereign immunity unless such immunity is explicitly waived. Thus, the United States and its agents are not "persons" and thus not amenable to suit under *Bivens*. *See*, *e.g.*, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61. 72 (2001); *Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007).

Here, the United States and BOP are immune from suit under *Bivens* as they are themselves arms of the federal government and have not explicitly waived their sovereign immunity. In addition, all individual Defendants are current or former employees of either the BOP, F.C.I. Fort Dix, or the United States Department of Justice - all federal entities and therefore immune from suit under *Bivens* in their official capacities. *See Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) ("An action against government officials in their official capacities constitutes an action against the United States; and Bivens claims against the United States are barred by sovereign immunity, absent an explicit waiver.") (citing *FDIC v. Meyer*, 510 U.S. 471, 483 (1994); *see also Webb*, 250 F. App'x at 471 (affirming the dismissal of a *Bivens* claim against the United States, BOP, and seven named individuals in their official capacities). Because Defendants are all agents of federal entities, a *Bivens* action cannot be maintained against them in their official capacities and thus the Complaint is barred by sovereign immunity. Therefore, all *Bivens* claims within Plaintiff's Second Amended Complaint against the United States, the BOP, and all thirty-two (32) individual Defendants in their official capacities are dismissed with prejudice.

**B. Eighth Amendment Claims against All Individual Defendants**

In his Complaint, Plaintiff names thirty-one Defendants to be sued in their individual capacities for violating his Eighth Amendment rights against cruel and unusual punishment for sufficiently serious conditions of confinement. (*See* ECF No. 42 at 25.) Plaintiff alleges that

7

F.C.I. Fort Dix was unconstitutionally "overcrowded, lack[ed] adequate sanitation and ventilation, expose[d] prisoners to asbestos, polluted water and lead paint, violated … noise levels, and offer[ed] inadequate medical treatment." (*Id.*)

Prison conditions can run afoul of the Eighth Amendment's proscription on cruel and unusual punishment by either ignoring "evolving standards of decency" or involving "unnecessary and wanton infliction of pain." *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citing *Gregg v. Georgia*, 428 U.S. 153, 171 (1976); *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). To assert an Eighth Amendment claim resulting from an inmate's conditions of confinement, a prisoner must first show that the alleged deprivation is "sufficiently serious" and that the prisoner has been deprived of the "minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. at 834 (1994). A prisoner must then show that prison officials recognized the deprivation and demonstrated "deliberate indifference" to the prisoner's health or safety. *Id*. Only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. *See Fantone v. Herbik*, 528 F. App'x 123, 127 (3d Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992)).

Here, of the thirty-one individual defendants, twenty-one can be dismissed from the Complaint due to deficiencies in the pleadings. In order for the Second Amended Complaint to proceed against any Defendant under an Eighth Amendment conditions of confinement theory, Plaintiff must allege in his complaint that the defendant had personal involvement in the condition that is now the source of the plaintiff's allegations. To wit, "[i]n order for liability to attach under [*Bivens*], a plaintiff must show that a defendant was personally involved in the deprivation of his federal rights." *Fears v. Beard*, 532 F. App'x 78, 81 (3d Cir. 2013) (per curiam) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "[L]iability cannot be

predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted).

Plaintiff has not alleged, in either his Second Amended Complaint or the Exhibits attached thereto, any personal involvement or actual knowledge of the following twenty-one named Defendants: Lappin, Dodrill, Conley, Fitzgerald, Hudgins, Lawhorn, Nichols, Hazelwood, Sutherland, Harwick, Yeomen, Donahue, Lemyre, Smeylk, Anderson, Samuels, Kenney, Watts, Croker, McLaughlin and Holder. Plaintiff appears to base the aforementioned Defendants' liability on *respondeat superior* due to their positions as associate wardens, BOP officials, and DOJ officials. Accordingly, Plaintiff's Second Amended Complaint fails to state a claim against the abovesaid Defendants as *Bivens* liability cannot be premised solely on the theory of *respondeat superior*. *See Evancho*, 423 F.3d at 353; *Cardona v. Warden--MDC Facility*, No. 12-7161, 2013 WL 6446999, at *5 (D.N.J. Dec. 6, 2013); *see also Iqbal*, 556 U.S. at 678 (holding that a pleading "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Therefore, because there is neither an allegation of personal direction nor one of actual knowledge, Plaintiff's Eighth Amendment claims against the above mentioned twenty-one Defendants will be dismissed without prejudice.

However, because Plaintiff does allege personal involvement and/or actual knowledge against Defendants Norwood, Zickefoose, Hollingsworth, Holdren, Dynan, Daniels, Carroll, Robinson, Bullock, and Alexander, the motion to dismiss the Eighth Amendment claim as to these defendants will be denied.

**C. Federal Tort Claims Act Claims against All Defendants**

Plaintiff next argues that all thirty-one individual Defendants, the BOP, and the United States are similarly liable under the FTCA, 29 U.S.C. § 1346. (ECF No. 42 at 27.) The FTCA reads, in pertinent part:

> ... the district courts, together with the United States District Court of the Virgin Islands shall have exclusive jurisdiction of civil actions on claims *against the United States,* for money damages, accruing on and after January 21, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment*,* under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred (emphasis added).

*See* 28 U.S.C. § 1346(b).

As is clear in the language of the statute, the only proper defendant in an FTCA case is the United States. Therefore, Plaintiff's FTCA claims against all individual Defendants and the BOP are dismissed with prejudice. *See Dambach v. United States*, 211 F. App'x 105, 108 (3d Cir. 2006).

As against the United States, Plaintiff's claim can also be dismissed without prejudice. Plaintiff's FTCA claim is premised upon a constitutional tort – violating the Eighth Amendment's proscription on cruel and unusual punishment. (*See* ECF No. 42 ¶¶ 79, 80.) Defendants point out, correctly, that the United States is not liable for constitutional tort claims under § 1346(b). *See Dambach*, 211 F. App'x at 107 (citing *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994) (holding that the FTCA does not cover constitutional torts, but rather state law torts that would be actionable if the United States were "a private person")). Because here, Plaintiff complains only of a constitutional tort,[1] namely a violation of the Eighth Amendment's

---

[1] Though Plaintiff uses the word "negligent" in his Complaint, his only reference to law is to the "the laws of the United States." (ECF No. 42 ¶ 79.) Additionally, in his Response to Defendants'

prohibition on cruel and unusual punishment, Plaintiff's FTCA claims against the United States are dismissed without prejudice.[2] *See Webb*, 250 F. App'x at 471 ("State law provides the source of substantive liability under the FTCA. Because federal law is the source of liability for the deprivation of a federal constitutional right, the United States is not liable under § 1346(b) for constitutional tort claims.") (internal citations omitted).

**D. Plaintiff's Civil RICO Claims against All Individual Defendants, the ACA, and Gondles**

Plaintiff's Civil RICO claims must be dismissed against all individual Defendants, as well as Defendants ACA and Gondles, because Plaintiff lacks standing to bring such a claim. In order to have standing to bring a civil RICO action, a plaintiff must allege (1) that his "business or property" suffered an injury; and (2) that said injury was proximately caused by defendants' 18 U.S.C. § 1962 violations. *See* 18 U.S.C. § 1964(c); *Maio v. Aeitna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000). Here, Plaintiff does not allege any specific loss to any business or property, but rather generally alleges that the taxpayer dollars intended to benefit inmates are "funneled to government agencies instead," (ECF No. 42 ¶ 132), that various prison officials were "skimming" cash from the prison commissary, (*Id*. ¶ 136), and that prison officials were otherwise receiving "under the table consideration." (*Id*. ¶ 137.) Plaintiff also joins Defendants ACA and Gondles in this claim because they accredit and therefore "lend legitimacy" to F.C.I. Fort Dix. (*Id*. ¶ 129.)

Plaintiff argues in his Response to Defendants' motions that his job as part of the "AM yard crew" afforded him an interest in property that can be redressed under with civil RICO.

---

Motion, Plaintiff specifically characterizes his FTCA action as redress "for constitutional torts." (ECF No. 53 at 16.)

[2] Defendants also argue in their motion that Plaintiff's "loud noise" claim is untimely. (See ECF No. 52-1 at 33.) The Court need not reach this argument as all of Plaintiff's FTCA claims against the United States are dismissed due to the constitutional nature of the tort allegations.

(ECF No. 53 at 17.) Plaintiff misunderstands what is meant by "business or property." To establish the requisite injury for civil RICO purposes, a plaintiff must demonstrate a "concrete financial loss" in the form of an "ascertainable out-of-pocket" deprivation. *See Magnum v. Archdiocese of Phila.,* 253 F. App'x 224, 226 (3d Cir. 2007); *Sarpolis v. Tereshko*, 26 F. Supp. 3d 497, 424 (E.D. Pa. 2014).

Because Plaintiff does not allege any specific loss to his business or property, he does not have standing under 18 U.S.C. § 1964. *See Magnum*, 253 F. App'x at 226 (holding that an unliquidated personal injury claim is too speculative to confer standing under the "injury to business or property" provision and noting that "a showing of injury requires proof of a concrete financial loss"). Therefore, because Plaintiff lacks standing under 18 U.S.C. § 1964, Plaintiff's civil RICO claims are dismissed with prejudice as to all Defendants, including Defendants ACA and Gondles.

### E. First Amendment Claims against Defendants Bullock, Carroll, Daniels, Alexander, Harwick, and Anderson

Plaintiff also brings an action for retaliation rooted in the First Amendment against individual Defendants Bullock, Carroll, Daniels, Alexander, Harwick, and Anderson in their individual capacities. (*See* ECF No. 42 at 29.) Plaintiff alleges that the above-named Defendants were complicit in retaliating against Plaintiff for filing grievances with the administration by: (1) filing warrantless incident reports against him, leading to loss of phone, e-mail, and visitation privileges during the holidays; (2) improperly denying him a bottom bunk; (3) improperly denying his requests to transfer to a halfway-house under the Second Chance Act; and (4) openly intimating that Plaintiff is a "rat" in front of other inmates, thereby endangering his life.

Defendants first argue in their motion to dismiss that "most of" Plaintiff's First Amendment claims are untimely and thus must be dismissed with prejudice. (*See* ECF No. 52-1

at 21.) The Court agrees. For *Bivens* actions arising in New Jersey, the statute of limitations is two years. *See McGill v. John Does A-Z*, 541 F. App'x 225, 227 (3d Cir. 2013). This means that, for an action under *Bivens* to be timely, a plaintiff must bring it within two years of when he has a "complete and present cause of action." *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *see also Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998) ("A *Bivens* claim accrues when the plaintiff knows, or has reason to know, of the injury that forms the basis of the action.").

Plaintiff filed his original complaint on January 8, 2013.[3] (*See* ECF No. 1.) This means, to be timely, the conduct forming the basis of Plaintiff's claims must have taken place on or after January 8, 2011. However, Defendant Bullock allegedly stripping Plaintiff of his prison job occurred in October 2010, making this claim untimely. In addition, the incident report that led to Plaintiff's loss of phone, e-mail, and visitation privileges for 90 days was filed on December 21, 2010. (*See* ECF No. 13-1, Ex. E.) The adjudication and punishment stemming from that incident report then occurred on December 22, 2010, meaning the claim stemming from these events is untimely as well. (*See id.*, Ex. P.) One week after that, on January 5, 2011, Defendant Daniels allegedly intimated that Plaintiff was a "rat" to other inmates, thus putting him in physical danger. (*See* ECF No. 42 ¶¶ 100-102.) All of this conduct occurred before the cut-off date of January 8, 2011, and thus all claims stemming from this conduct are untimely.

Therefore, because Plaintiff's abovementioned claims are untimely, Plaintiff's retaliation claims stemming from the December 2010 incident report, the adjudication of that report,

---

[3] Though Plaintiff's Complaint was filed on January 11, 2013, the record indicates that he gave the Complaint to prison officials to mail on January 8, 2013. The Court is cognizant of both the instruction to construe *pro se* complaints liberally, *see Haines v. Kerner*, 404 U.S. 519 (1972), and the so-called "prisoner mailbox rule." *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998) (noting that, under the federal "prisoner mailbox rule," a document is deemed filed on the date it is given to prison officials for mailing).

13

Plaintiff's loss of his prison job, and Defendant Daniels' "rat" comment will be dismissed with prejudice as to all Defendants.[4] *See Peguero v. Meyer*, 520 F. App'x 58, 61 (3d Cir. 2013) (noting that dismissal for failure to state a claim is proper once the two-year period of limitations has run).

Defendants next argue that even on the admittedly timely retaliation claims of (1) improper denial of a bottom bunk, and (2) improper denial of a transfer to a halfway-house under the Second Chance Act, a number of the named Defendants are not alleged to have had any personal involvement and thus can be dismissed from the suit. As with the Eighth Amendment conditions of confinement claims, *supra*, First Amendment retaliation claims must allege personal direction and/or actual knowledge on the part of named defendants. *See Evancho*, 423 F.3d at 354. Here, the only named Defendants alleged to have had any personal involvement with the two remaining retaliation claims are Defendants Bullock and Carroll. Therefore, Plaintiff's remaining First Amendment claims are dismissed without prejudice as to Defendants Daniels, Alexander, Harwick, and Anderson.

As to the remaining claims of (1) improper denial of a bottom bunk, and (2) improper denial of a transfer to a halfway-house under the Second Chance Act, even though neither of these actions is a constitutional violation by itself, "…government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (internal citations omitted). To wit, a prisoner alleging that prison officials have retaliated against him for exercising his constitutional rights must prove

---

[4] Plaintiff makes no argument in his Response to Defendants' Motion that his circumstances warrant any kind of equitable tolling. (*See* ECF No. 53 at 13.) As such, equitable tolling will not be applied. *See Wallace v. Kato*, 549 U.S. 384, 396 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances").

that: 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered "adverse action" at the hands of prison officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him. *See Carter v. McGrady*, 292 F.3d 152, 157-58 (3d Cir. 2002) (citing *Rauser*, 241 F.3d at 334). Conduct is constitutionally protected when it encompasses a protected liberty interest. *See Bullock v. Buck*, 611 F. App'x 744, 747 (3d Cir. 2015).

Plaintiff claims that he was retaliated against for filing grievances with the administration. The filing of grievances with a prison administration is a constitutionally protected First Amendment right. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Smith v. Mensinger*, 293 F. 3d 641, 653 (3d Cir. 2002). Plaintiff then alleges that he suffered adverse actions, *i.e.*, not getting a bottom bunk and not being transferred to a halfway-house. (*See* ECF No. 42 at 34.) Defendants included a number of Declarations and other documents purporting to show that Plaintiff's protected conduct was neither a substantial nor a motivating factor in denying him both a bottom bunk and a transfer to a halfway-house. (*See* ECF No. 52-4 *et seq.*) However, as Defendants filed a motion to dismiss under FED. R. CIV. P. 12(b)(6), none of Defendants' exhibits can be considered at this time as they exist outside the Complaint. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that courts are not permitted to look outside "the pleading which is attacked" in a 12(b)(6) motion) (internal citations omitted). Accordingly, as Plaintiff has adequately pled that he was engaged in protected conduct and suffered an adverse action, as well as the fact that Defendants rely on documents outside of the Complaint to argue that Plaintiff's constitutionally protected conduct was not a substantial or motivating factor in his request denials, Defendants' motion to dismiss this retaliation claim against Bullock and Carroll will be denied.

**F. Remaining Claims and Defendants**

Plaintiff's remaining claims are: (1) a First Amendment retaliation claim against Defendants Bullock and Carroll for improperly denying Plaintiff a bottom bunk, and improperly denying Plaintiff a transfer to a halfway-house under the Second Chance Act; and (2) an Eighth Amendment conditions of confinement claim against Defendants Norwood, Zickefoose, Hollingsworth, Holdren, Dynan, Robinson, Bullock, Carroll, and Alexander.

## VI. CONCLUSION

Defendants' ACA and Gondles motion to dismiss the Second Amended Complaint is granted and plaintiff's RICO claims against them are dismissed with prejudice. The remaining Defendants' motion to dismiss is granted in part and denied in part. Defendants' motion is granted as to Plaintiff's Eighth Amendment claims against Defendants Lappin, Dodrill, Conley, Fitzgerald, Hudgins, Lawhorn, Nichols, Hazelwood, Sutherland, Harwick, Yeomen, Donahue, Lemyre, Smeylk, Anderson, Samuels, Kenney, Watts, Croker, McLaughlin and Holder. Defendant's motion to dismiss is denied on Plaintiff's Eighth Amendment claim against Defendants Norwood, Zickefoose, Hollingsworth, Holdren, Dynan, Daniels, Carroll, Robinson, Bullock, and Alexander.

Defendants' motion to dismiss is granted on Plaintiff's First Amendment retaliation claims stemming from (1) stripping Plaintiff of his prison job, (2) Defendant Daniels' calling Plaintiff a "rat" in front of other inmates, (3) the December 2010 incident report, and (4) the adjudication and punishment stemming from the December 2010 incident report as to all Defendants. Additionally, Defendants Alexander, Anderson, Daniels and Harwick are dismissed from the two remaining First Amendment claims, *i.e.*, retaliation against protected conduct in the form of (1) improperly denying Plaintiff a bottom bunk, and (2) improperly denying Plaintiff a

transfer to a halfway-house under the Second Chance Act, for lack of personal involvement. Defendants' Bullock and Carroll's motion to dismiss the First Amendment retaliation claim arising from the above mentioned conduct is denied.

Defendants' motion to dismiss is also granted on all of Plaintiff's claims arising under both the FTCA and RICO as to all Defendants with prejudice, except Plaintiff's FTCA claim against the United States which is dismissed without prejudice.

An appropriate order will be entered.

DATED:  December 21, 2015

                s/Robert B. Kugler
                ROBERT B. KUGLER
                United States District Judge