NOT FOR PUBLICATION                                                    (Doc. Nos. 65, 69)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

—————————————————————
                                          :
FRANK DIPPOLITO,                          :
                                          :         Civil No. 13-175 (RBK/JS)
                    Plaintiff,            :
                                          :         **OPINION**
                                          :
                                          :
                                          :
            v.                            :
                                          :
THE UNITED STATES OF AMERICA,             :
et al.,                                   :
                    Defendants.           :
—————————————————————  :

**KUGLER**, United States District Judge:

Frank Dippolito ("Plaintiff") brings federal claims for Eighth Amendment violations concerning conditions of confinement against Defendants Norwood, Zickefoose, Hollingsworth, Holdren, Dynan, Daniels, Carroll, Robinson, Bullock, and Alexander and for First Amendment retaliation against Defendants Bullock and Carroll (collectively, "Defendants"). The Court notes that Defendant Norwood has been terminated from this case since the instant motion as filed. *See* August 5, 2016 Opinion (Doc. No. 67). This matter comes before the Court on Defendants' Motion for Summary Judgment (Doc. No. 65) and Plaintiff's Motion to Appoint Pro Bono Counsel (Doc. No. 69). For the following reasons, Defendants' motion is **GRANTED** and Plaintiff's motion is **DENIED AS MOOT**.

1

## I.    FACTUAL BACKGROUND

The facts, in the light most favorable to the Plaintiff, are as follows[1]: Frank Dippolito was an inmate at FCI Fort Dix in January 2013, but has since been released from federal custody. Defendants' Statement of Material Facts Not in Dispute ("Defs.' Statement") ¶ 1. This case involves several claims that Plaintiff submitted through the prisoner grievance process. Defs.' Statement ¶ 13. This Court has dismissed claims related to several of these grievances in its December 21, 2015 Opinion. (Doc. No. 55). The relevant claims that remain have to do with the conditions of Plaintiff's confinement and alleged retaliation for Plaintiff exercising his right to file grievances.

Plaintiff filed a number of grievances and administrative tort claims related to his conditions of confinement. In April 2011, Plaintiff filed Remedy ID 635307, which was a BP-9 form asking whether inmates could return to their units from work duty if there was inclement weather. Moran. Decl., Ex. 5, at 4 (Doc. No. 65-11). This grievance was rejected because Plaintiff failed to submit proof (through a BP-8) that he had attempted informal resolution of the matter. *Id.* Plaintiff then appealed the rejection to the Regional and Central Bureau of Prisons ("BOP") offices. *Id.* at 2-3. Plaintiff's appeals were rejected due to his failure to submit a BP-8. *Id.* Plaintiff filed an additional grievance related to work duty in inclement weather (Remedy ID 636987), which was also rejected at the institutional, Regional, and Central Office levels due to Plaintiff's failure to describe his relief sought on the BP-9 form. *Id.* at 4-6.

Plaintiff filed three other grievances related to his conditions of confinement: 1) Remedy ID 643817, requesting a copy of a decibel test (June 2011); 2) Remedy ID 730222, requesting a

---

[1] The Court notes that Plaintiff made no responsive filing regarding Defendants' Statement of Material Facts Not in Dispute. Accordingly, the Court treats Defendants' Statement as fact for the purposes of this motion. The Court also borrows information from Plaintiff's Second Amended Complaint.

cancer screening (April 2013); and 3) Remedy 753618, requesting a wash basin in the food services area (October 2013). *Id.* at 13, 15, 17. Each of these grievances was denied by the warden at the institutional level. *Id.* Plaintiff appealed each denial to the Regional Office, which upheld the warden's denials. *Id.* at 14, 16, 18. Plaintiff did not appeal the Regional Office's respective decisions to the Central Office. Moran Decl. ¶ 11 (Doc. No. 65-6).

Furthermore, Plaintiff filed a number of administrative tort claims related to his conditions of confinement. Plaintiff filed on claim on or about June 1, 2011 alleging that the PA system at FCI Fort Dix was too loud, which was denied by the BOP on November 22 2011. Moran Decl., Ex. 6 (Doc. No. 65-12). Plaintiff also filed eight administrative tort claims regarding conditions at FCI Fort Dix on February 11, 2011. Moran Decl. ¶ 12. Plaintiff's complaints had to do with alleged exposure to jet fuel/exhaust from McGuire Air Force Base, tainted drinking water, exposure to asbestos, lack of sprinkler systems, sewage leaks, poor ventilation in the unit, lead paint, and contaminated soil. Defs.' Statement ¶ 23. Plaintiff's complaints did not allege injuries due to these conditions. Defs.' Statement ¶ 24.

Plaintiff alleges that the unit staff began their pattern of retaliation against him after he began formally requesting consideration for placement in an extended halfway house pursuant to the Second Chance Act. Second Amended Complaint ("SAC") ¶ 83. Plaintiff had an interaction in which Defendant Bullock yelled at Plaintiff on October 19, 2010 after finding a copy of a memorandum that Plaintiff should not have had in his possession. *Id.* ¶ 84-85. On October 28, 2010, Bullock allegedly threatened to take away Plaintiff's job. *Id.* ¶ 89-90. On December 21, 2010, Plaintiff had an additional run-in with Defendant Bullock. Plaintiff reported to his job but did not have work to do for the day, so he returned to his unit building. *Id.* ¶ 92. When Plaintiff returned to his unit building, Bullock asked him why he was in the building, since he should

have been at his work assignment. *Id.* ¶ 93. Plaintiff and Bullock disagreed over whether Plaintiff

was authorized to return to his unit building after receiving no work at his work assignment. *Id.*

¶ 94-95. A hearing was conducted on December 22, 2010 to determine whether Plaintiff

committed an infraction. *Id.* at ¶ 97. The hearing panel determined that Plaintiff had been in his

unit building without authorization and imposed sanctions. *Id.* ¶ 98.

Plaintiff filed a grievance (Remedy ID 632835) regarding this incident report, which was

rejected as untimely and upheld by the Regional and Central Bureau of Prisons Offices. Defs.'

Statement ¶ 14. Plaintiff claims that he was further retaliated against when his application for a

bottom bunk was denied on March 15, 2011 due to the December 21, 2010 incident report. SAC

¶ 107. Plaintiff claims that the prisoner handbook contained no provision informing inmates that

they may be denied a bottom bunk due to an adverse incident report, and thus, this denial was

retaliation for his halfway house requests and grievance filings. *Id.* ¶ 83-84. Plaintiff filed a

grievance related to the bottom-bunk pass denial (Remedy ID 632704) which was fully

exhausted. Moran Decl. ¶ 7.

## II.    STANDARD

The court should grant a motion for summary judgment when the moving party "shows

that there is no genuine dispute as to any material fact and that the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the

outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict

for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In

deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide

issues of fact. *Id.* at 248. Because fact and credibility determinations are for the jury, the non-

moving party's evidence is to be believed and ambiguities construed in her favor. *Id.* at 255.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257. Furthermore, the nonmoving may not simply allege facts, but instead must "identify those facts of record which would contradict the facts identified by the movant." *Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002). The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   DISCUSSION

### A.  Eighth Amendment Claims

Plaintiff alleges that the conditions of his confinement violated the Eighth Amendment's proscription on cruel and unusual punishment. Prison conditions can run afoul of the Eighth Amendment's proscription on cruel and unusual punishment by either ignoring "evolving standards of decency" or involving "unnecessary and wanton infliction of pain." *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citing *Gregg v. Georgia*, 428 U.S. 153, 171 (1976); *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). To assert an Eighth Amendment claim resulting from an inmate's conditions of confinement, a prisoner must first show that the alleged deprivation is "sufficiently serious" and that the prisoner has been deprived of the "minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. at 834 (1994). A prisoner must then show that prison officials recognized the deprivation and demonstrated "deliberate indifference" to the prisoner's health or safety. *Id.* Only "extreme deprivations" are sufficient to present a claim for

unconstitutional conditions of confinement. *See Fantone v. Herbik*, 528 F. App'x 123, 127 (3d Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)).

The Prison Litigation Reform Act ("PLRA") requires that an inmate must exhaust all available administrative remedies before bringing civil rights claims against prison officials. *Hughes v. Knieblher*, 341 Fed. App'x 749, 751 (3d Cir. 2009) (citing *Jones v. Bock*, 549 U.S. 199, 211 (2007)). The PLRA applies to claims brought by a litigant if they were a prisoner at the time the complaint was filed, even if they are later released. *Drayer v. Att'y Gen. of Del.*, 81 Fed. App'x 429, 431 (3d Cir. 2003) (quoting *In re Smith*, 114 F.3d 1247, 1251 (D.C. Cir. 1997)). The Court must look to the BOP's regulations to determine whether the prisoner satisfied the exhaustion requirement. *Jones*, 549 U.S. at 218. BOP regulations require that an inmate attempt to resolve their grievances informally before seeking administrative remedies. 28 C.F.R. § 542.13(a). Should this fail, the inmate can submit a written request on BOP Form BP-9 to the warden of their facility within 20 days of the relevant incident. 28 C.F.R. § 542.14(a). If the inmate is not pleased with the warden's decision, they may then appeal to the regional director using Form BP-10, and then to the general counsel at the Central Offices using Form BP-11. 28 C.F.R. § 542.15. Submitting Form BP-11 to the general counsel is the final administrative appeal available. 28 C.F.R. § 542.15(a). Failure to exhaust may not be remedied by amending a complaint. *See Ahmed v. Dragovich*, 297 F.3d 201, 209 (3d Cir. 2002).

The Court finds that there is no dispute that Plaintiff failed to exhaust his potential administrative remedies for grievances related to the conditions of his confinement. Plaintiff variously failed to file the correct forms, amend deficiencies in grievances, and fully appeal grievances to the BOP's Central Office. Plaintiff clearly failed to exhaust his remedies in compliance with the BOP's regulations. Accordingly, Plaintiff's Eight Amendment claims against

Defendants Zickefoose, Hollingsworth, Holdren, Dynan, Daniels, Carroll, Robinson, Bullock, and Alexander must be dismissed.

### B. First Amendment Retaliation Claims

"A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks and citation omitted). However, "once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to legitimate penological interest. *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001); *see also Carter v. McGrady*, 292 F.3d 152, 154 (3d Cir. 2002) (retaliation claim fails where prison officials would have disciplined inmate for policy violations notwithstanding his protected activity).

The parties do not appear to dispute that Plaintiff filing grievances is constitutionally protected conduct. Defendants argue that Plaintiff cannot adequately show that denying a bottom-bunk pass rises to the level of an adverse action that is sufficient to deter a person of ordinary firmness from exercising his constitutional rights. The Third Circuit has held that conditions of confinement or changes in conditions of confinement can constitute an adverse action. *See Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). The Court does not, however, believe that any reasonable jury could conclude that denying Plaintiff a bottom bunk constitutes an adverse action, particularly in light of the fact that Plaintiff continued to exercise his right to file grievances after he was denied a bottom-bunk pass.

Furthermore, even if denying Plaintiff a bottom-bunk pass was an adverse action, Plaintiff cannot show that there was a causal link between his grievances and the adverse action. While Plaintiff's complaint alleges that there was no policy in place for denying him a bottom-bunk pass given his seniority, there is no dispute at this stage of the litigation that FCI Fort Dix had a policy that limited bottom bunks to inmates with demonstrated medical needs and inmates who had not received an incident report less than one year prior to requesting a bottom-bunk pass. Defs.' Statement ¶ 32; Moran Decl., Ex. 4 (Doc. No. 65-10). There is also no dispute that Plaintiff received an incident report in December 2010. There is no dispute that Plaintiff requested a bottom bunk in March 2011, which was less than one year after he received an incident report. It follows that there is no dispute that Plaintiff was ineligible for a bottom bunk per FCI Fort Dix policy. Therefore, the Defendants can show that Plaintiff's bottom-bunk request would have been denied notwithstanding his grievances. Accordingly, the Court grants summary judgment in favor of Defendants Bullock and Carroll regarding Plaintiff's First Amendment retaliation claim.

## IV.    CONCLUSION

For the reasons stated herein Defendants' Motion for Summary Judgment is **GRANTED**. Plaintiff's Eighth Amendment claims are **DISMISSED**. Plaintiff's Motion to Appoint Pro Bono Counsel is **DENIED AS MOOT**. An appropriate order shall issue.


Dated:    12/23/2016                                              s/Robert B. Kugler
                                                                 ROBERT B. KUGLER
                                                                 United States District Judge